AO 106 (Rev. 06/09) Application for a Search Warrant

FILED
JUN 05 2018
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Samsung S8, Serial No. R28K22PG7QE
Currently in the possession of:
Chula Vista Border Patrol Station evidence vault,
located at 311 Athey Avenue, San Ysidro California, 92173

Case No. ~~18MJ1988-JMA~~

18MJ3027

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the Southern District of California, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. § 1324(a)(2)(B)(ii) | Bringing in Illegal Aliens for Financial Gain |
| 8 U.S.C. § 1324(a)(2)(B)(iii) | Bringing in Illegal Aliens Without Presentation |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: __________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Esteban Limon, Border Patrol Agent - Intelligence
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/5/18

*Judge's signature*

City and state: San Diego, California

Hon. Karen S. Crawford, Magistrate Judge
*Printed name and title*

# ATTACHMENT A

The item to be searched is:

Samsung S8, Serial No. R28K22PG7QE

Currently in the possession of the Chula Vista Border Patrol Station evidence vault, located at 311 Athey Avenue, San Ysidro California, 92173.

**ATTACHMENT B**

The following evidence to be searched for and seized pertains to violations of Bringing in Illegal Aliens for Financial Gain, in violation 8 U.S.C. § 1324(a)(2)(B)(ii), and Bringing in Illegal Aliens Without Presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii):

1. Communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data beginning on May 7, 2017, up to and including May 7, 2018:

a. tending to indicate efforts to smuggle aliens from Mexico to the United States;

b. tending to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens;

c. tending to indicate efforts to transport within the United States aliens smuggled from Mexico to the United States;

d. tending to monitor the progress of the illegal aliens while they are in transit within the United States;

e. tending to coordinate the time the smuggled aliens will arrive at predetermined locations;

f. tending to identify co-conspirators, criminal associates, or others involved in smuggling aliens from Mexico to the United States, and transporting aliens within the United States;

g. tending to notify or warn co-conspirators, criminal associates, or others of law enforcement activity, including the presence and location of Border Patrol vehicles and the operational status of Border Patrol checkpoints;

h. tending to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event;

i. tending to identify other facilities, storage devices, or services - such as email addresses, IP addresses, phone numbers - that may contain electronic evidence tending to indicate efforts to smuggle aliens from Mexico to the United States, and transport the aliens within the United States;

j. tending to identify travel to or presence at locations used as stash houses, load houses, or delivery points for aliens smuggled into the United States;

k. tending to identify the user of, or persons with control over or access to, the subject phone; or

l. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

CPT

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Esteban Limon, having been duly sworn, do hereby state that the following is true to my knowledge and belief:

## A. INTRODUCTION

1. I make this affidavit in support of an application for a search warrant of Samsung S8, Serial No. R28K22PG7QE (hereinafter "**Target Telephone**") as described in Attachment A (incorporated herein by reference), which was seized pursuant to the arrest of Cindy Lenette GUTIERREZ ("GUTIERREZ") on May 7, 2018. The **Target Telephone** is currently in the possession of the Chula Vista Border Patrol evidence vault, located at 311 Athey Avenue, San Ysidro California, 92173.

2. I seek authority to search the **Target Telephone** for evidence of Bringing in Illegal Aliens for Financial Gain, in violation 8 U.S.C. § 1324(a)(2)(B)(ii), and Bringing in Illegal Aliens Without Presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii), from May 7, 2017 up to and including May 7, 2018, as more fully described in Attachment B (incorporated herein by reference).

3. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a Search Warrant, it does not set forth every fact that I have learned during the course of this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. Dates, times and amounts are approximations unless otherwise noted.

## B. TRAINING AND EXPERIENCE

4. I am a United States Border Patrol Agent – Intelligence (BPAI) with the Department of Homeland Security (DHS), Customs and Border Protection (CBP), United States Border Patrol (USBP). I have been so employed as a BPAI since May 2007. I have been employed as a full-time, sworn federal agent with the USBP since 2008, having graduated from the USBP Basic Border Patrol Training Academy. The 19-week academy curriculum covers basic police tactics and specialized training in the Immigration and Naturalization Act ("INA"), criminal law, statutory authority, as well as cross training in

Title 21 United States Code, Controlled Substance Act ("CSA") violations and cross training in Title 19 United States Code, Customs law violations.

5. I currently conduct investigations of criminal violations relating to alien smuggling. I have participated in numerous alien smuggling-related investigations, many of which involved the arrest of persons for alien smuggling offenses. In those cases, I have conducted interviews of the arrested persons and their associates. Through these interviews, I have gained a working knowledge and insight into the activities and operations of alien smugglers.

6. Through the course of my training, investigations, prior law enforcement experience, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones and portable radios to maintain communications with co-conspirators in order to further their criminal activities. I am also aware that it is a common practice for alien smugglers to communicate with the smuggled aliens regarding smuggling arrangements and payment utilizing cellular telephones and portable radios. Alien smuggling conspiracies generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messages, and phone numbers of co-conspirators and aliens to be smuggled.

7. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

8. Based upon my training and experience as a BPAI, and consultations with law enforcement officers experienced in alien smuggling investigations, I know that persons engaged in alien smuggling activities tend to use cellular telephones for communications, records, or data including but not limited to emails, text messages, photographs, audio files, videos, or location data, for the following:

a. tending to indicate efforts to smuggle aliens from Mexico to the United States;

b. tending to direct drivers to synchronize a drop off and/or pick up time of the smuggled aliens;

c. tending to indicate efforts to transport within the United States aliens smuggled from Mexico to the United States;

d. tending to monitor the progress of the illegal aliens while they are in transit within the United States;

e. tending to coordinate the time the smuggled aliens will arrive at predetermined locations;

f. tending to identify co-conspirators, criminal associates, or others involved in smuggling aliens from Mexico to the United States, and transporting aliens within the United States;

g. tending to notify or warn co-conspirators, criminal associates, or others of law enforcement activity, including the presence and location of Border Patrol vehicles and the operational status of Border Patrol checkpoints;

h. tending to make arrangements with the smuggled aliens prior to the smuggling event, and to arrange for payment after the smuggling event;

i. tending to identify other facilities, storage devices, or services - such as email addresses, IP addresses, phone numbers - that may contain electronic evidence tending to indicate efforts to smuggle aliens from Mexico to the United States, and transport the aliens within the United States;

j. tending to identify travel to or presence at locations used as stash houses, load houses, or delivery points for aliens smuggled into the United States;

k. tending to identify the user of, or persons with control over or access to, the subject phone; or

l. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data above.

## C. PROBABLE CAUSE FOUND IN SUPPORT OF CRIMINAL COMPLAINT

9. On April 24, 2018, United States Magistrate Judge Jan M. Adler found probable cause for a Complaint (Magistrate Case No. 18MJ1968) charging GUTIERREZ with one count of Bringing in Illegal Aliens for Financial Gain, in violation 8 U.S.C. § 1324(a)(2)(B)(ii), and Bringing in Illegal Aliens Without Presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). A grand jury indicted GUTIERREZ (Case No. 18CR2532-BAS) for the same charges on May 18, 2018. The Probable Cause Statement supporting the Complaint includes the following information.

10. On April 13, 2018, at approximately 8:54 a.m., the San Diego Police Department (SDPD) dispatch received a call from a concerned citizen regarding a noise coming from the trunk of a black 2000 Mercedes C230 bearing license plate CA 7XBT206 ("vehicle"). The vehicle was parked on the 1600 block of Via De La Melodia, San Ysidro, California 92173, located approximately one mile west and two miles north of the San Ysidro Port of Entry. Government databases provide that GUTIERREZ is the registered owner of the vehicle.

11. SDPD officers responded to the vehicle at approximately 9:11 a.m. that same day, knocked on the trunk of the vehicle, and heard someone inside knock back. SDPD officers opened the trunk after several attempts, and removed two females, later identified as Lei LEI ("LEI") and Bingxing CHEN ("CHEN").

12. Border Patrol Agent ("BPA") Alfred Gumbs responded to the location of the vehicle and determined LEI and CHEN are Chinese nationals without immigration documents permitting them to enter or remain in the United States legally. BPAs transported LEI and CHEN to the Chula Vista Border Patrol Station for processing.

13. Border-crossing history records indicate the vehicle traveled from the United States into Mexico through the Otay Mesa California Port of Entry ("OTM POE") on April 13, 2018, at approximately 12:09 a.m. Records further indicate GUTIERREZ applied for re-entry into the United States at the OTM POE later that same morning, at approximately 2:38 a.m., as the driver and sole visible occupant of the vehicle. GUTIERREZ presented a

valid United States Passport at the time of admission and confirmed her identity. CBP officers admitted GUTIERREZ into the United States at 2:39 a.m., as confirmed by available video.

14. Government database records further indicate GUTIERREZ is the only known individual to enter the United States from Mexico in the vehicle, which she has done approximately 88 times between December 7, 2017 and April 13, 2018. Law enforcement databases indicate the vehicle had not been reported stolen.

15. Investigators of the Joint California Forensics Center ("JCFC") responded to the location of the vehicle to collect forensic evidence and found a set of car keys underneath the driver-side floor mat of the vehicle.

16. On April 14, 2018, at approximately 11:26 a.m., BPA Jasper Frontiero videotaped an interview of LEI with the assistance of a Mandarin translator. LEI reported the following:

a. She was born in Fouzho, China, where she arranged with an unknown male to be smuggled into the United States for approximately $15,000.

b. LEI flew from Beijing, China to Tijuana, Mexico to facilitate her ultimate entry into the United States.

c. LEI met a Mandarin-speaking male at the Tijuana airport, who drove her to a house at an unknown location in Tijuana.

d. LEI stayed at the Tijuana house for a few days, until unknown individuals ordered her and another female (CHEN) to get into the trunk of the vehicle during the early morning of April 13, 2018.

e. The vehicle made numerous stops, including once when an unknown male opened the trunk and quickly shut it on LEI's hand as she attempted to get out.

f. LEI could hear a female voice coming from inside the vehicle, apparently making telephone calls.

g. When the vehicle finally stopped, LEI heard the driver exit the vehicle, return briefly after a few minutes, then leave again and not return.

h. After a while, it become increasingly hot in the trunk. She feared for her life, and began banging on the trunk with the hope someone would hear them and let them out.

17. After interviewing LEI, BPA Frontiero videotaped an interview of CHEN with the assistance of a Mandarin translator. CHEN reported the following:

a. CHEN arranged to be smuggled into the United States with an unknown person from Hong Kong she found on an Internet website, in exchange for approximately $18,000.

b. CHEN flew from China to Tijuana, where she met a Mandarin-speaking male at the airport who drove her to a house in Tijuana.

c. Unidentified individuals later ordered CHEN and LEI into the vehicle during the early morning hours of April 13, 2018.

d. The vehicle made frequent stops, including one occasion when an unknown male opened the trunk and quickly shut it when LEI attempted to get out.

e. LEI heard a female voice inside the vehicle speaking on a telephone.

f. At the final stop, the vehicle driver exited, and someone opened and quickly shut a door after 20 minutes.

g. It became increasingly hot in the vehicle after a few hours.

h. CHEN feared for life and banged on trunk in the hope of drawing attention.

**D. <u>ADDITIONAL FACTS IN SUPPORT OF PROBABLE CAUSE</u>**

18. The weather on April 13, 2018, was sunny and clear, with the temperature reaching a high of 73 degrees Fahrenheit. Certified Consulting Meteorologist Jan Null, Department of Geosciences, San Francisco State University, advised me that the interior of a vehicle can reach temperatures that reach up to 115 degrees Fahrenheit if the vehicle is sitting idle for over an hour in 70 degrees Fahrenheit weather.

19. On May 7, 2018, BPAs arrested GUTIERREZ after she applied for entry into the United States at the OTM POE while driving a Chrysler Sebring. GUTIERREZ had the

**Target Telephone** in her possession at the time of her arrest.[1] BPAI Vargas seized and transported the **Target Telephone** to the Chula Vista Border Patrol Station evidence vault, located at 311 Athey Avenue, San Ysidro California, 92173, where it is currently remains.

20. Affiant responded to the OTM POE, advised GUTIERREZ of her *Miranda* rights, obtained a voluntary waiver of her rights, and obtained her consent to be interviewed without the presence of an attorney. GUTIERREZ claimed the following:

a. She worked at the Paradise Point Hotel in the United States on April 12, 2018. She finished her shift at 12:00 a.m. on April 13, 2018, and drove home to Tijuana, where she parked the vehicle in front of her apartment.

b. She returned to the United States through the OTM POE at approximately 3:00 a.m. on April 13, 2018, in order to report for a 4:00 a.m. shift at the Brigantine Restaurant in Imperial Beach.

c. She drove the vehicle to a McDonald's restaurant located at the intersection of Palomar and Broadway in Chula Vista, where she got out, locked the vehicle, and "went for a walk" to nearby a Target store and Wells Fargo bank.

d. She discovered her vehicle was missing when she returned from her walk, and then took the trolley and bus in order to report for her shift at work.

e. She did not contact the police to report a stolen vehicle because she was "unable to charge" her phone and was not aware there was a phone she could use at the restaurant.

21. GUTIERREZ also claimed she has maintained possession of both sets of keys belonging to the vehicle, even though a set was located underneath the driver-side floor mat on April 14, 2018.

---

[1] On the date of GUTIERREZ's arrest, agents examined some of the contents of the **Target Telephone**. The agents' decision to request the present warrant was not motivated by anything agents may have seen during the prior search. In an abundance of caution, I ask the Court not to consider information agents may have seen during that examination in determining whether there is probable cause for the requested warrant.

22. Video obtained from the Target Store (1240 Broadway, Chula Vista, California 91911) where GUTIERREZ claimed she "went for a walk" fails to show GUTIERREZ or her vehicle in area between 3:00 a.m. and 4:30 a.m. on April 13, 2018.

23. GUTIERREZ's boss with Contract Services Group, which provides cleaning services at the Brigantine Seafood & Oyster Bar in Imperial Beach, California, reported that GUTIERREZ did not show up to work as scheduled on the morning of April 13, 2018, but did work later that morning from 8:15 a.m. to 11:00 a.m.

24. GUTIERREZ told a fellow employee that she was going to the Department of Motor Vehicles (DMV) after work on April 13, 2018, to file a report regarding her stolen vehicle. Investigating agents have not found any evidence that GUTIERREZ reported her vehicle missing to the DMV or any law enforcement agency.

**E. METHODOLOGY**

25. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic

data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, I will collect the **Target Telephone** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

**F. <u>CONCLUSION</u>**

28. Based upon my experience and training, consultation with other law enforcement officers experienced in alien smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe that evidence, fruits, and instrumentalities of Bringing in Illegal Aliens for Financial Gain, in violation 8 U.S.C. § 1324(a)(2)(B)(ii), and Bringing in Illegal Aliens Without Presentation, in violation of 8 U.S.C. § 1324(a)(2)(B)(iii) (as more fully described in Attachment B), will be found on the **Target Telephone** (as more fully described in Attachment A).

I swear the foregoing is true and correct to the best of my knowledge and belief.

ESTEBAN LIMON
Border Patrol Agent- Intelligence
U.S. Border Patrol

SUBSCRIBED AND SWORN TO ME BEFORE THIS 5th DAY OF JUNE 2018.

HON. KAREN S. CRAWFORD
United States Magistrate Judge